## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

HENRY LEE JONES,              )

                                  )

     **Plaintiff,**            )

                                  )    **No. 3:19-cv-00795**

**v.**                              )    **Judge Trauger**

                                  )

**TONY MAYS, et al.,**       )

                                  )

     **Defendants.**       )

## MEMORANDUM

Henry Lee Jones, a death row inmate at Riverbend Maximum Security Institution ("Riverbend") in Nashville, Tennessee, filed a pro se amended complaint against Riverbend Warden Tony Mays, seven Riverbend employees, and five Riverbend inmates pursuant to 42 U.S.C. § 1983.[1] (Doc. No. 15.) He also filed an application to proceed in this court without prepaying fees and costs (Doc. Nos. 16, 17), a motion to appoint counsel (Doc. No. 18), six procedural motions (Doc. Nos. 19, 20, 21, 22, 23, 24), and a "Statement and Facts" (Doc. No. 25).[2] The case is before the court for a ruling on the *in forma pauperis* application, an initial review of the complaint pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e, and consideration of the plaintiff's other filings.

---

[1] The amended complaint is the plaintiff's third attempt, pursuant to an order of the court (Doc. No. 10), to file a viable complaint in this case. The court hereinafter refers to this operative document as the "complaint."

[2] The plaintiff has also filed a "Motion to Correct" (Doc. No. 26) that provides brief clarifying information concerning the plaintiff's litigation history and financial obligations described in the complaint and *in forma pauperis* application. The motion will be granted.

# I. Application for Leave to Proceed *in Forma Pauperis*

The court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). The plaintiff's application to proceed as a pauper and certified trust account statement reflect that he cannot pay the full filing fee in advance. (*See* Doc. Nos. 16, 17.) Accordingly, the application will be granted and the $350 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

# II. Initial Review of the Complaint

Under the PLRA, the court must review and dismiss any prisoner complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. §§ 1915(e)(2), 1915A; and 42 U.S.C. § 1997e.

## A. Standard of Review

To determine whether a complaint "fails to state a claim on which relief may be granted" under the PLRA's screening requirements, the court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true unless they are entirely without credibility. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). An assumption of truth does not extend to legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The court determines whether the plaintiff's factual allegations "plausibly suggest an entitlement to relief," *Williams*, 631 F.3d at 383 (quoting *Iqbal*, 556 U.S. at 681), that rises "above the speculative level," *Twombly*, 550 U.S. at 555.

2

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Even under this lenient standard, however, pro se plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) (explaining the role of courts is not "to ferret out the strongest cause of action on behalf of pro se litigants" or to "advis[e] litigants as to what legal theories they should pursue").

### B. Factual Background[3]

The complaint first alleges that the plaintiff has endured "sexual harassment" at Riverbend from October 2010 to the present. (Doc. No. 15 at 9, 13.) The first incident occurred in 2010-2011, when the plaintiff was supervised by then-associate warden Tony Mays. (*Id.*) At that time, former officer Kenneth Dickson forced the plaintiff to shower without a curtain and inappropriately touched him.[4] (*Id.*) The plaintiff filed grievances and written statements to the unit manager and the warden, but the grievances "disappear[ed]" and there was no investigation. (*Id.*)

The complaint also alleges that, between October 2010 and May 9, 2020, Case Manager Tate, Unit Manager Keys, Officer Terry Foster, Sergeant D.A. Castillo, and other non-party Riverbend officers spread "fake" and "fabricat[ed]" "homosexual rumors" about the plaintiff through "conversation with other inmates and officers." (*Id.* at 10, 13.) The plaintiff specifically

---

[3] The lengthy complaint is divided into eight repetitive "claims." The court has reorganized the plaintiff's allegations for purposes of initial review.

[4] Dickson is not a defendant in this action.

alleges Mays, Keys, Tate, and Associate Warden Lewis labeled him homosexual in April 2016. (*Id*. at 11.) He also alleges that these officers engaged in "aggravate[d] stalking" by "peeking into the plaintiff cell door window looking for homosexual activities or sexual activities." (*Id*. at 13.) Plaintiff claims that he is not a homosexual, and these individuals have used "homosexual bias misconduct," (*id*. at 10), and "dirty tactics" to "defeat and control" him. (*Id*. at 11.)

The complaint also alleges that, through June 2020, the plaintiff has been retaliated against for refusing to participate in homosexual activities and filing grievances about sexual harassment. (*Id*.) First, the plaintiff alleges that his grievances on this subject have been denied and he has been placed in segregation for reporting these incidents. (*Id*. at 10, 13.) Second, the complaint alleges that Foster, Castillo and numerous other non-party Riverbend officers allowed inmate kitchen workers to retaliate against the plaintiff "with sabotage meals." (*Id*. at 12-15.) The complaint alleges that Riverbend inmates Rogers, Jahi, Thomas, and Bane, who are assigned to food service duty and prepare meals for death row inmates, were allowed to deliver "sabotage meals," including burnt food, small portions, "the end piece of [a] slice [of] bread," overcooked pancakes, watered down mashed potatoes or grits, medications mixed into food, and food poisoned with toxic chemicals. (*Id*. at 12.) For example, the plaintiff allegedly found medication in his chili on January 14, 2020, received burned potatoes on June 8, 2020, and on May 9, 2020, received oatmeal containing "three small pieces of glass" in an effort to "assassinate" him after he filed a grievance against Foster concerning stolen and damaged property the day before. (*Id*. at 15.) The plaintiff has unsuccessfully filed grievances regarding these sabotaged meals. (*Id*.)

Next, the complaint alleges that Foster, Tate, Keys, Mays, Lewis, Shift Commander Captain Herro, and numerous non-party Riverbend officers knew about, ignored, "aided and abetted," and "covered up" attempted sexual assaults of the plaintiff by other inmates for over ten

years. (*Id*. at 12.) In particular, the plaintiff alleges Foster assisted inmate Leonard Young in an attempted sexual assault in June 2017.[5] (*Id*.) Plaintiff filed grievances on these matters, but there was no investigation or discipline. (*Id*.)

The complaint also alleges that the plaintiff has been improperly put in segregation without due process. First, the plaintiff alleges that, in May 2014, Mays, Tate, and another non-party Riverbend officer placed the plaintiff in confinement without a hearing or "any good reason." (*Id*. at 9.) The same allegedly occurred in "late 2015" at the hands of Mays, Tate, Lewis, Keys, and Herro. (*Id*.) Tate, Keys, and Lewis carried it out again in September 2016. (*Id*.) Finally, the complaint alleges that, after the plaintiff had an altercation with another inmate on April 14, 2019, the plaintiff was placed in segregation without due process for 18 months.[6] (*Id*. at 10.) The plaintiff alleges that he received a written report on the incident from Sergeant Kelly Hunt, who was not a witness, but Tate, Keys, Herro and a non-party Riverbend officer did not allow the plaintiff to challenge the report in a hearing. (*Id*.) The plaintiff alleges that this violation was also "carried out" by Mays and Lewis. (*Id*. at 11.)

Finally, the complaint alleges that, from June 2018 through May 2020, Foster has "attacked" the plaintiff's personal property, and that Castillo, Lewis and other non-party Riverbend officers have failed to guard that property. (*Id*. at 14.) The plaintiff alleges that Foster promotes homosexual activities and fraternizes with a group of death row inmates who tell him how to carry out "attacks" on inmates' property. (*Id*.) The purpose of the property attacks is "sex, defeat, and control." (*Id*.) The complaint lists 15 items belonging to the plaintiff that Foster has allegedly

---

[5] Young is not a defendant in this action.

[6] The complaint separately states that this period of time was 18 months and 13 months. Construing the complaint in the light most favorable to the plaintiff at this stage, the court adopts 18 months for purposes of initial review.

damaged or stolen totaling $918.15, including: televisions, boots, shoes, clothes, a coaxial cable, a "boom box," a hair dryer, toothbrush holders, a microwave bowl, five bags of chips, and one chicken alfredo. (*Id.*) The complaint also alleges that Foster allowed inmate Bell into the plaintiff's cell to damage or steal his property. (*Id.*)

The plaintiff brings claims against Warden Tony Mays, Associate Warden Ernest Lewis, Unit Manager Michael Keys, Case Manager Warren Tate, Captain Herro, Sergeant Kelly Hunt, Officer Terry Foster, and Sergeant Domingo Castillo, as well as against Riverbend inmates Rogers, Jahi, Thomas, Bane, and Bell. (*Id.* at 2-5.) He seeks compensatory damages, punitive damages, and injunctive relief. (*Id.* at 16.)

### C.    Analysis

Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

### 1.    Statute of Limitations

The statute of limitations for claims brought under Section 1983 in Tennessee is one year. *Jordan v. Blount Cty.*, 885 F.3d 413, 415 (6th Cir. 2018) (citing Tenn. Code Ann. § 28-3-104(a)). Under federal law, the limitations period generally "begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Harrison v. Michigan*, 722 F.3d 768, 773 (6th Cir. 2013) (quoting *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996)). While the statute of limitations is an affirmative defense and, "[a]s such, [d]efendants

6

[bear] the ultimate burden of proof on that issue," *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) (citations omitted)), "a complaint is subject to dismissal without any further proof if 'the allegations . . . show that relief is barred by the applicable statute of limitations." *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

Under the prison mailbox rule, the court deems a prisoner's complaint filed when it is given to prison officials for mailing and assumes that date to be "the date he or she signed the complaint," unless there is evidence to the contrary. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citations omitted). In this case, the plaintiff signed the original complaint on September 9, 2019. (Doc. No. 1 at 6.) The court subsequently required the plaintiff to file two amended complaints to achieve compliance with the Federal Rules of Civil Procedure. However, for purposes of initial review, the court assumes that the plaintiff first attempted to assert his rights on this date. Applying the one-year statute of limitations, therefore, any Section 1983 claim that accrued prior to September 9, 2018, is time-barred.

It is clear from the face of the complaint that many of the plaintiff's Section 1983 claims accrued prior to September 9, 2018, including a number of claims arising from specific incidents that allegedly occurred between 2010 and 2018. All Section 1983 claims arising from events prior to September 9, 2018, are time-barred and will be dismissed. However, liberally construing the complaint as the court must, several of the plaintiff's claims are not clearly time-barred, including claims obviously accruing after September 9, 2018, and claims for which the relevant dates are unclear from the face of the complaint. These include certain claims concerning alleged sexual harassment, failure to protect, denial of due process, destruction of personal property, and retaliation.

7

### 2. Official Capacity Claims

As a threshold matter, the plaintiff indicates that he sues the Riverbend employee defendants in their official capacities. Liberally construing the complaint, however, the court concludes for two reasons that the plaintiff intends to sue these defendants in both their individual and official capacities. First, the complaint indicates that the plaintiff may misunderstand the distinction between these terms. Specifically, the plaintiff sues the Riverbend employees in their "official" capacities and the Riverbend inmates in their "individual" capacities, irrespective of the relief sought. This suggests that the plaintiff may believe it is merely a defendant's employment status that dictates the capacity in which he or she is sued. Second, the relief the plaintiff seeks provides notice that he intends to sue the Riverbend employee defendants in both capacities. The court considers the "course of proceedings," *Shepherd v. Wellman*, 313 F.3d 963, 967-68 (6th Cir. 2002) (citing *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir.2001) (en banc)), to determine whether "the allegations of the complaint would provide notice to a defendant of the plaintiff's intent to sue him or her in an individual capacity." *Brown v. CCA/Metro Davidson Det. Facility*, No. 3:13-cv-00423, 2013 WL 3071052, at *2 (M.D. Tenn. June 18, 2013) (citing *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991) and *Shepherd*, 313 F.3d at 967-68). Here, the plaintiff demands both compensatory and punitive damages from the individual defendants, *see Proctor v. Bledsoe*, No. 3:13-00309, 2014 WL 1341931, at *4 (M.D. Tenn. Apr. 3, 2014) (explaining that courts consider, among other things, "the nature of the plaintiff's claims, [and] requests for compensatory or punitive damages" under the "course of proceedings" test to determine whether defendants have received notice of an intent to hold them personally liable), as well as certain injunctive relief against the state of Tennessee. (*See* Doc. No. 15 at 16.) Accordingly, the court

8

concludes that the plaintiff sues the Riverbend employee defendants in their individual and official capacities.

The court now considers the official capacity claims against the Riverbend employees. Each state possesses certain immunities from suit that "flow from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc). Consequently, a state may not be sued for money damages in federal court by a private individual, subject to a few exceptions. *Id*. at 358-59; *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'"); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). The Supreme Court has made clear that state agencies (i.e., "arm[s] of the state") and those agencies' officials enjoy this same immunity. *Ernst*, 427 F.3d at 358 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). This is because the individuals are working on behalf of the state, and so a complaint against such an individual in his official capacity "is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the state itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Stated differently, generally speaking, states, arms of the state, and those arms' officials are not "persons" for purposes of Section 1983 liability. *Id*.

Sovereign immunity applies here. The Riverbend employee defendants are employed by the Tennessee Department of Correction ("TDOC"). *See, e.g.*, *Carter v. Bell*, No. 3:10-0058, 2010 WL 3491160, at *4 (M.D. Tenn. Sept. 1, 2010), *report and recommendation adopted*, No. 3-10-0058, 2010 WL 3834850 (M.D. Tenn. Sept. 27, 2010) (holding that the Riverbend Warden "as an employee of [TDOC], represents the State of Tennessee"); *Arauz v. Bell*, No. 3:06-0901, 2007 WL

2457474, at *2 (M.D. Tenn. Aug. 24, 2007) (adopting report and recommendation holding that Riverbend employees are "employees of [TDOC]"). "TDOC is an arm of the state of Tennessee for purposes of Eleventh Amendment immunity." *Primm v. Tenn. Dep't of Corr.*, No. 3:15-cv-00230, 2017 WL 1210066, at *5 (M.D. Tenn. Mar. 31, 2017) (citing *Owens v. O'Toole*, No. 3:14-cv-02040, 2014 WL 5846733, at *3 (M.D. Tenn. Nov. 12, 2014); *Gennoe v. Washburn*, No. 3:19-cv-00478, 2019 WL 5693929, at *5 (M.D. Tenn. Nov. 4, 2019) (holding official-capacity claim against TDOC employee is equivalent to claim against the state of Tennessee); *Green v. Daniel*, No. 3:14-cv-01331, 2014 WL 4347624, at *3 (M.D. Tenn. Sept. 2, 2014). Because an award on the plaintiff's official capacity claims against the Riverbend employee defendants would ultimately be paid by the State of Tennessee, Tennessee's sovereign immunity protects these defendants. The plaintiff's official capacity claims for money damages against these defendants will therefore be dismissed.

There are only three exceptions to the general rule of sovereign immunity: (a) where a state has waived its immunity and has consented to be sued in federal court, *see Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)); (b) where Congress validly abrogates sovereign immunity through its enforcement powers pursuant to the Fourteenth Amendment to the United States Constitution, *see Seminole Tribe of Florida*, 517 U.S. at 57-73; *Quern v. Jordan*, 440 U.S. 332, 340) (1979) (collecting cases)); and (c) where a plaintiff sues state officials in their official capacities seeking only prospective injunctive relief for a continuing violation of federal law, *see Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 269 (1997); *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014).

The first two exceptions do not apply: Congress has not abrogated Eleventh Amendment immunity under Section 1983, and Tennessee has not waived it or consented to suit under Section 1983. *Primm*, 2017 WL 1210066, at \*5 (citing *Owens*, 2014 WL 5846733, at \*3); *Burrell v. Tenn. Dep't of Human Servs.*, No. 94-5754, 1995 WL 314891, \*2 (6th Cir. May 23, 1993) (per curiam); *Heithcock v. Tenn. Dep't of Children's Servs.*, No. 3:14-cv-2377, 2015 WL 4879107, at \*6 (M.D. Tenn. Aug. 14, 2015). However, the plaintiff does seek prospective injunctive relief of the nature that may implicate *Ex Parte Young*. "[D]emands for injunctive relief are properly brought against a TDOC official in his official capacity." *Hall v. Trump*, No. 3:19-cv-00628, 2020 WL 1061885, at \*2 (M.D. Tenn. Mar. 5, 2020) (citing *Will*, 491 U.S. at 71 n.10). The court thus considers whether the plaintiff has properly stated such a claim against the Riverbend employee defendants.

Under Section 1983, the state of Tennessee cannot be held liable (for injunctive relief) under a theory of *respondeat superior* or vicarious liability. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rather, the plaintiff must allege: (1) that he suffered a constitutional violation; and (2) that a policy or custom of TDOC or the state of Tennessee directly caused the violation. *Hadrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978)). In other words, "[a] plaintiff seeking to impose liability under [Section] 1983 must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged," such that there is a "direct causal link between the municipal action and the deprivation of federal rights." *Phillips v. Shelton*, No. 2:18-cv-00077, 2019 WL 429679, at \*4 (M.D. Tenn. Feb. 4, 2019) (quoting *Burns v. Robertson Cty.*, 192 F. Supp. 3d 909, 920 (M.D. Tenn. 2016) and *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) an official with final

11

decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Here, the plaintiff does not attribute his alleged harms to any particular TDOC or Tennessee policy. While the plaintiff's prayer for relief vaguely mentions "T.D.O.C. policies" regarding "due procedure/processing" and "illegal segregation," the complaint contains no allegations regarding any TDOC policy being a moving force behind any alleged injury to the plaintiff. In fact, the factual allegations of the complaint do not mention TDOC policies at all. The complaint alleges only that individual Riverbend officers and administrators, absent any guiding policy, violated the plaintiff's rights and damaged his property.

The closest the plaintiff comes to invoking a policy or custom are allegations that Riverbend authorities ignored his grievances and reports of violations for "approximately ten years." (*See, e.g.*, Doc. No. 15 at 10, 11, 12.) Liberally construing the complaint, the court infers that the plaintiff intended to allege a custom or tolerance or acquiescence of federal rights violations. This is also known as a "custom-of-inaction" theory. *Howse v. Hodous*, 953 F.3d 402, 411 (6th Cir. 2020). However, as pleaded, this claim is insufficient for two reasons. First, to the extent that the plaintiff's claims are "premised on the mishandling of his grievances[,]" he fails to state a claim under Section 1983. *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (explaining that "a prisoner has no constitutional right to an effective prison grievance procedure"); *Crockett v. Davidson Cty. Sheriff's Dep't*, No. 3:19-cv-00545, 2019 WL 5592546, at *3 (M.D. Tenn. Oct. 30, 2019). Second, the plaintiff has not alleged that *TDOC* or *Tennessee*, as opposed to Riverbend employees, "had notice (or constructive notice) of a 'clear and persistent pattern' of unlawful activity," that TDOC or Tennessee "tacitly approved of that

unlawful activity by doing nothing," and that TDOC or Tennessee's "tacit approval was the moving force behind his constitutional violation." *Howse*, 953 F.3d at 411 (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (cleaned up)). Rather, the plaintiff alleges only that Riverbend employees ignored complaints about other Riverbend employees. As a result, the plaintiff has not alleged "that [TDOC or Tennessee] approved of th[e] unlawful activity or that any such approval caused [the plaintiff] to suffer a constitutional injury." *Id.* at 411. Even construed most generously, "[m]ere blanket assertions that [TDOC or Tennessee] 'tolerated' or 'condoned' officer misconduct aren't enough." *Id.* (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016)). Accordingly, the plaintiff's official-capacity claims for injunctive relief will be dismissed for failure to state a claim.

### 3. Personal Property

The court now turns to the individual capacity claims against the Riverbend employee defendants. The plaintiff first brings claims for deprivation of personal property against Officer Foster, Sergeant Castillo, Captain Herro, and Associate Warden Lewis. Specifically, the complaint alleges Foster damaged or stole, or allowed inmate Bell to damage or steal, fifteen items of the plaintiff's personal property valued at approximately $900. The complaint also alleges that Castillo, Herro, and Lewis failed to safeguard the plaintiff's personal property. "Persons sued in their individual capacities under [Section] 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012); *Hall*, 2020 WL 1061885, at *5; *see also Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.") Furthermore, because there is no *respondeat superior* liability under Section 1983, supervisory officials are not liable in their individual capacities unless they "either encouraged the specific incident of misconduct or in

13

some other way directly participated in it." *Hall*, 2020 WL 1061885, at *5 (citing *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). Thus, supervisory officials who are aware of the unconstitutional conduct of their subordinates but fail to act generally cannot be held liable in their individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). In addition, "[a] failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for Section 1983 liability." *Woodard v. Farris*, No. 2:20-cv-00007, 2020 WL 1469886, at *5 (M.D. Tenn. Mar. 25, 2020) (citations omitted).

Here, the plaintiff does not sufficiently allege personal involvement of Castillo, Herro, or Lewis in this alleged violation. Accordingly, these claims will be dismissed for failure to state a claim. Concerning the claim against Foster, the Due Process Clause of the Fourteenth Amendment protects against the unlawful taking of a person's property by public officers. *Id*. However, the United States Supreme Court has held that a plaintiff's loss of property at the hands of a state employee is not a violation of due process if the state affords a means to resolve the alleged loss. *Parratt v. Taylor,* 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniel v. Williams*, 474 U.S. 327 (1986). Where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a cognizable due process claim. *Id*. at 543-44. Accordingly, a plaintiff "must plead and prove the inadequacy of state post-deprivation remedies if he is to recover for lost personal property." *Shuler v. Hall*, No. 3:18-cv-01223, 2019 WL 1777899, at *4 (M.D. Tenn. Apr. 23, 2019) (citing *Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995)). A prisoner's failure to sustain this burden requires dismissal of his Section 1983 due process claim. *Id*. (citing *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985)).

14

The Sixth Circuit Court of Appeals has held that Tennessee's statutory remedy for loss of property affords an adequate remedy to return items either negligently or intentionally converted. *Woodard*, 2020 WL 1469886, at *5 (citing *Brooks*, 751 F.2d at 199). Here, the plaintiff has not alleged that he attempted post-deprivation remedies and that they were inadequate. Rather, the complaint alleges that the plaintiff complained about his missing property to prison officials and filed unsuccessful grievances.[7] (Doc. No. 15 at 14.) Thus, because there appear to have been adequate state post-deprivation remedies available to the plaintiff, his claims concerning lost or taken property must be dismissed. *See, e.g., Perkins v. Washburn*, No. 3:19-cv-00959, 2020 WL 3972749, at *3-4 (M.D. Tenn. July 14, 2020) (dismissing due process claim regarding property loss where plaintiff failed to allege inadequate post-deprivation remedies and alleged complaining to officials and filing grievances); *Woodard*, 2020 WL 1469886, at *5 (same).

### 4. Failure to Protect

Next, the plaintiff brings individual capacity failure-to-protect claims against Officer Foster, Sergeant Castillo, Sergeant Hunt, Case Manager Tate, Unit Manager Keys, Warden Mays, Associate Warden Lewis, and Captain Herro. The Eighth Amendment protects prisoners from "cruel and unusual punishment," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), including the right to be free "from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833); *see also Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (explaining that the Eighth Amendment imposes on prison officials "an affirmative duty to protect inmates from violence perpetrated by other prisoners"); *Stanton v. Joyner*, No. 3:19-cv-00270, 2020 WL 1042018, at *2 (M.D. Tenn. Mar. 4, 2020). Accordingly, the

---

[7] Although the complaint alleges that prison officials "prohibit [the plaintiff] from seeking 'justice,'" the court construes this to mean that the plaintiff is dissatisfied with the outcome of the grievances that he alleges he filed. (*See* Doc. No. 15 at 14.) The plaintiff does not allege that he was prevented from filing grievances. (*Id.*)

15

Constitution requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A failure-to-protect claim has an objective and a subjective component. For the objective component, a plaintiff must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Bishop*, 636 F.3d at 766 (quoting *Farmer*, 511 U.S. at 833). For the subjective component, the plaintiff must allege that a prison official "acted with 'deliberate indifference' to inmate health or safety," *id*. (quoting *Farmer*, 511 U.S. at 834), meaning the official "kn[ew] of and disregard[ed]" the excessive risk of harm. *Id*. at 766-67 (quoting *Farmer*, 511 U.S. at 837); *see also Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016) (citing *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)). It is not enough that the official "should have perceived" a significant risk, "but did not. " *Farmer*, 511 U.S. at 838. An official's state of mind must be "more blameworthy than negligence" before liability will attach. *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Farmer*, 511 U.S. at 835). Finally, in analyzing the subjective component, the court must consider each defendant's knowledge individually. *See Bishop*, 636 F.3d at 767 (citing *Phillips v. Roane Cty.*, 534 F.3d 531, 542 (6th Cir. 2008) and *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)).

The complaint makes two distinct failure-to-protect allegations. First, the complaint alleges that Foster and Castillo allowed – and, in the case of Castillo, encouraged – inmates working in food-preparation jobs to engage in a longstanding campaign of delivering dangerous meals to other inmates as a means of harassment and retribution, including meals delivered to the plaintiff in 2020 containing toxic medicine and pieces of glass. Viewing these allegations in the plaintiff's favor, he alleges conditions posing a substantial risk of serious harm. Being assaulted in prison, even if indirectly, is not "part of the penalty that criminal offenders pay for their offenses against society."

16

*Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The plaintiff also alleges that Foster and Castillo had sufficient knowledge of these conditions and chose to be deliberately indifferent to the plaintiff's health and welfare. Accordingly, the court concludes that, at this early stage, the plaintiff adequately states an Eighth Amendment failure-to-protect claim against Foster and Castillo.

Second, the complaint alleges that Foster, Hunt, Tate, Keys, Mays, Lewis, and Herro knew about, ignored, "aided and abetted," and "covered up" attempted sexual assaults on the plaintiff by other inmates for over ten years. (Doc. No. 15 at 12.) However, the complaint mentions only one specific incident, a 2017 attempted assault that falls far outside the statute of limitations for this Section 1983 action. (*Id*.) This leaves only broad and vague assertions of wrongdoing. Even if the court were to assume that the plaintiff had satisfied the objective component based solely upon sexual assault being a serious harm, the complaint fails to adequately plead how these defendants were deliberately indifferent to the plaintiff's safety. For example, the complaint does not include any allegations concerning what each of these defendants knew about the risk to the plaintiff or how they may have disregarded that risk. While Federal Rule of Civil Procedure 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Accordingly, these claims will be dismissed for failure to state a claim. However, the dismissal will be without prejudice, so that the plaintiff is not precluded from moving to re-assert the claims, if appropriate, supported by more specific allegations.

### 5.    Due Process

The complaint next alleges that the plaintiff was denied due process when he was moved to segregation without a disciplinary hearing. As an initial matter, to the extent that Plaintiff's

17

claims are premised only on a "violation of [TDOC] policies," he fails to state a claim under Section 1983. *Crockett*, 2019 WL 5592546, at *3 (citations omitted); *Grinter*, 532 F.3d at 574. However, the Fourteenth Amendment provides that prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citations omitted). To state a procedural due process claim, the plaintiff must show that (1) he had a protected liberty or property interest; (2) he was deprived of that interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of that interest. *Janinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). The first prong of this claim is a threshold requirement. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, "the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." *Pickelhaupt v. Jackson*, 364 F. App'x 221, 224 (6th Cir. 2010) (citing *Wilkinson*, 545 U.S. at 224).

Prisoners have a narrower set of protected interests than individuals who are not incarcerated. *Wolff*, 418 U.S. at 556. As relevant here, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221-22 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). A liberty interest may arise, however, in avoiding conditions of confinement that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 223 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Here, the complaint alleges that, after an April 2019 altercation between the plaintiff and another inmate, Sergeant Hunt, Case Manager Tate, Unit Manager Keys, Captain Herro, Associate Warden Lewis, and Warden Mays acted together to send the plaintiff to segregation for eighteen months without a hearing or opportunity to challenge a written report concerning the incident.

While highly concerning, this allegation does not satisfy the threshold requirement of demonstrating a constitutionally protected liberty interest because the plaintiff "does not provide any details about the restrictions imposed as a result of being placed in lockdown." *Crockett*, 2019 WL 5592546, at *4. Without explaining how lockdown conditions differ from his ordinary conditions, Plaintiff cannot establish that his punishment resulted in an "atypical and significant" hardship. *Id.* (citing *Williams*, 526 F. App'x at 562-63); *see also Joseph v. Curtin*, 410 F. App'x 865, 869 (6th Cir. 2010) (holding that an inmate had "not demonstrated that a liberty interest was implicated" because his "complaint [did] not include any allegations about" his new security classification level "to suggest that it imposes an atypical and significant hardship"). Because the plaintiff has not satisfied his threshold burden of establishing that the challenged disciplinary hearing resulted in conditions of confinement that "imposed atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, he fails to state a Fourteenth Amendment procedural due process claim. *See, e.g., Montgomery v. Hall*, No. 3:19-cv-01113, 2020 WL 4003769, at *9 (M.D. Tenn. July 15, 2020) (finding prisoner plaintiff failed to state due process claim in part because he failed to allege specific conditions of segregation); *Crockett*, 2019 WL 5592546, at *4 (same). These claims will therefore be dismissed for failure to state a claim. However, given the alleged length of the plaintiff's segregation, the dismissal will be without prejudice, so that the plaintiff is not precluded from moving to re-assert this claim, if appropriate, supported by more specific allegations.

6<b>.</b>    <b>First Amendment Retaliation</b>

The complaint also brings several individual capacity First Amendment retaliation claims. In order to state a claim, the plaintiff must plausibly allege "that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary

19

firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill*, 630 F.3d at 472 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)); *Strader v. Cumberland Cty.*, No. 2:19-cv-00045, 2020 WL 291383, at *10 (M.D. Tenn. Jan. 21, 2020). In *Hill*, the Sixth Circuit reversed the district court's dismissal of a First Amendment retaliation claim on initial review, emphasizing that the essential elements of such a claim are not overly difficult to establish, "especially in light of the 'indulgent treatment' that '[c]ourts are instructed to give . . . to the 'inartfully pleaded' allegations of pro se prison litigants." *Hill*, 630 F.3d at 471 (quoting *Pasley v. Conerly*, 345 F. App'x 981, 986 (6th Cir. 2009)). The Court of Appeals noted that, where the facts alleged in a prisoner's complaint are sufficient to support these elements, the claim should go forward even though the inmate may not "explicitly state that he is making a First Amendment retaliation claim or "make an effective argument for that claim in his . . . complaint." *Id*. at 471.

First, the complaint alleges that the plaintiff has been retaliated against by Officer Foster, Sergeant Castillo, Case Manager Tate and Unit Manager Keys in two ways for declining homosexual advances and filing grievances about sexual harassment: allowing inmates to give the plaintiff dangerous meals containing dangerous substances or sending the plaintiff to segregation. Second, the plaintiff alleges Officer Foster retaliated against him, after the plaintiff filed a grievance against Foster related to stolen and damaged property, by allowing inmates to give the plaintiff a dangerous meal containing glass.

The court finds both of these allegations sufficient to state nonfrivolous First Amendment retaliation claims. First, the filing of a non-frivolous grievance is protected conduct. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Gennoe*, 2019 WL 5693929, at *6; *see also Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) ("Nothing in the First Amendment itself suggests that

20

the right to petition for redress of grievances only attaches when the petitioning takes a specific form.") Second, although "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse," *Thaddeus-X*, 175 F.3d at 398, being given potentially harmful food or being sent to segregation merely for asserting one's rights "would likely have a strong deterrent effect" on a prisoner's protected activity. *Lumbard v. Lillywhite*, --- F. App'x ---, No. 18-2335, 2020 WL 2569357, at *6 (6th Cir. May 21, 2020) (citing *Thaddeus-X*, 175 F.3d at 398 (adverse action "threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed")). Finally, the allegation that the defendants were motivated by a desire to punish the plaintiff for reporting violations satisfies the third element. *See id.* (explaining that a retaliation claim survives if a plaintiff "alleges facts that his protected activity was 'a motivating factor' behind the adverse action") (citing *Thaddeus-X*, 175 F.3d at 399); *see also Hill*, 630 F.3d at 475-76 (retaliatory motive can be supported by circumstantial evidence, including "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action"). Accordingly, these claims will be allowed to proceed for further development.

### 7.    Sexual Harassment

Finally, the complaint alleges that Case Manager Tate, Unit Manager Keys, Officer Foster, and Sergeant Castillo sexually harassed the plaintiff. Specifically, the complaint alleges these defendants spread negative rumors to inmates and staff about the plaintiff's perceived sexual orientation, and they peeked into the plaintiff's cell "looking for homosexual activities." (Doc. No. 15 at 13.)

The Eighth Amendment requires prison officials "to provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 F. App'x 448, 454-55 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). Therefore, to establish an Eighth Amendment violation, a plaintiff must make an objective showing of the deprivation of "the minimal civilized measure of life's necessities." *Id.* at 454 (quoting *Rhodes*, 452 U.S. at 347); *see also Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834) ("[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."). A plaintiff must show that a defendant, subjectively, acted "wantonly," with "deliberate indifference to the plaintiff's serious needs." *Richmond*, 450 F. App'x at 455 (citing *Farmer*, 511 U.S. at 834).

Under this standard, harassment and offensive comments by prison or jail officials, even if morally reprehensible, do not violate the Eighth Amendment or give rise to a cause of action under Section 1983, because "they do not cause objectively serious harm." *Hill v. Hickman Cty. Jail*, No. 1:15-CV-0071, 2015 WL 5009301, at *6 (M.D. Tenn. Aug. 21, 2015); *see also Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) ("[H]arassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits.") (citing *Ivey*, 832 F.2d at 854). Accordingly, "a prison official's offensive remarks about an inmate's presumed sexual preference does not state a claim" for cruel and unusual punishment under the Eighth

22

Amendment. *Hill v. Kinnaman*, No. 3:15-CV-01431, 2015 WL 8484487, at *3 (M.D. Tenn. Dec. 9, 2015) (citing *Murray v. U.S. Bureau of Prisons*, 106 F.3d 401, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997)); *see also Johnson*, 357 F.3d at 545-46 (dismissing claims based on allegations that numerous prison officials repeatedly made offensive remarks about the plaintiff's transsexualism and presumed sexual preference and concluding that "the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree"); *Morrison v. Greenwald*, No. 3:09-CV-009, 2010 WL 1253962, at *9 (S.D. Ohio Feb. 24, 2010) *report and recommendation adopted*, No. 3-:09-CV-009, 2010 WL 1253958 (S.D. Ohio Mar. 23, 2010) ("The Constitution does not protect inmates (or anyone else) from gross insults by public officials, including prison guards. Furthermore, Plaintiff suffered no injury from the insult."). Other forms of non-physical harassment that does not inflict pain similarly cannot sustain a Section 1983 claim. *See, e.g., Johnson*, 357 F.3d at 545 (dismissing claim against correctional officer for alleged harassing and invasive activities including banging and kicking cell, throwing food, smearing windows to make them opaque, and jerking the prisoner when escorting him, in what the plaintiff alleged to be "an attempt to cause him to suffer a heart attack, stroke or nervous breakdown," because such actions "do not constitute the type of infliction of pain that the Eighth Amendment prohibits").

Here, the plaintiff alleges that, based on bias, he was subjected to offensive remarks and rumors concerning his sexual orientation and harassed through invasions of privacy while in his cell. There can be little doubt that bias against homosexuality – whether it be actual or falsely attributed – has no place in civil society. *See, e.g., Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731 (2020). However, no matter how "shameful and utterly unprofessional" spreading pejorative rumors about an individual's private sexual conduct may be, *Hill*, 2015 WL 8484487, at *3

23

(quoting *Johnson*, 357 F.3d at 545-46), the plaintiff does not allege that he was caused physical pain or injury of constitutional dimension sufficient to bring these allegations within the ambit of the Eighth Amendment.[8] Accordingly, these claims will be dismissed for failure to state a claim.

### 8.    Claims Against Riverbend Inmates

The complaint also brings individual capacity Section 1983 claims against five Riverbend inmates – Rogers, Jahi, Thomas, Bane, and Bell – who allegedly "sabotaged" the plaintiff's food or "attacked" his property. However, Section 1983 creates a cause of action only against persons acting under color of state law. 42 U.S.C. § 1983. "[A]n inmate is not a state actor or a person acting under the color of state law for purposes of stating a claim under [Section] 1983." *Smith v. Hall*, No. 3:19-cv-00375, 2019 WL 3075890, at *2 (M.D. Tenn. July 15, 2019) (citing *Goodell v. Anthony*, 157 F. Supp. 2d 796, 801 (E.D. Mich. 2001) (collecting cases)); *see also Barbee v. Lee*, No. 3:18-cv-01271, 2018 WL 6198393, at *2 (M.D. Tenn. Nov. 28, 2018) (explaining that "[i]nmates do not act 'under color of any state statute, ordinance, regulation, custom, or usage' as required to be liable under Section 1983") (quoting *Nobles v. Brown*, 985 F.2d 235, 238 (6th Cir. 1992)).

Here, the plaintiff does not allege Rogers, Jahi, Thomas, Bane, or Bell were acting under color of state law at the time they committed any relevant acts. However, the court considers whether their actions can be attributed to the state. The Sixth Circuit has recognized several tests to assist in making this determination, but it has recently explained that "the Supreme Court has made clear that all of our various 'criteria' boil down to a core question: whether 'there is such a

---

[8] To be clear, to the extent the complaint may allege that these defendants failed to protect the plaintiff from other inmates who were spreading harassing rumors, it still does not state a viable claim. Because the plaintiff "does not allege that he has suffered or been threatened with any physical violence or other serious harm," he has failed to satisfy the "substantial risk of serious harm" element of deliberate indifference to his safety required for a failure-to-protect claim. *Hill*, 2015 WL 8484487, at *2.

'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 676 (6th Cir. 2018) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001); *Jackson v. Met. Edison Co.*, 419 U.S. 345, 351 (1974)); *see also Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co., Inc.*, 780 F. App'x 197, 204 (6th Cir. 2019) ("A private party 'can be held to constitutional standards' only 'when its actions so approximate state action that they may be fairly attributed to the state.'") (quoting *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 564 (6th Cir. 2007)). One way that nexus can be satisfied is if a state exercises "coercive power or provide[s] [ ] significant encouragement, either overt or covert[.]" *S.H.A.R.K.*, 499 F.3d at 565 (quoting *Lansing v. City of Memphis*, 202 F.3d 821, 829 (6th Cir. 2000); *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). However, "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives[.]" *Blum*, 457 U.S. at 1004-05. "More is needed. [A] plaintiff must allege and prove that state officials coerced or participated in the [private actor's] decision-making" process. *Snodgrass-King*, 780 F. App'x at 205 (quoting *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007)). Accordingly, if the state has not provided "significant encouragement," and the actor is not a "willful participant in joint activity with the State or its agents," a private individual cannot be liable for civil rights violations under Section 1983. *Barbee*, 2018 WL 6198393, at *2 (quoting *Brentwood Acad.*, 531 U.S. at 296).

The complaint does not satisfy this test. The plaintiff alleges only that certain Riverbend employees "allowed" inmates to engage in malfeasance, "had knowledge of" or "knew about" their misbehavior, or "helped cover up" their actions.[9] (*See, e.g.*, Doc. No. 15 at 11, 12, 13.) The

---

[9] On the specific subject of sexual assaults by inmates, the complaint includes one broad statement that Riverbend employees "all participate, engage, and they all aid[ ] & abet[ ] the situation one way or another."

complaint does not allege that the state employees influenced the decision-making of the inmates, that the Riverbend employees significantly encouraged the inmates to act, or that the inmates participated in a joint activity with the Riverbend employees. Accordingly, the complaint does not adequately plead a nexus between the state and the actions of the inmate defendants that is so close that the inmates' private behavior may be considered "taken under color of state law." *Barbee*, 2018 WL 6198393, at *2. The plaintiff's Section 1983 claims against the inmate defendants will therefore be dismissed. This dismissal will be without prejudice to any state law claims the plaintiff may assert against Rogers, Jahi, Thomas, Bane, and Bell.[10]

### III. Pending Motions

The plaintiff has filed a motion to appoint counsel. (Doc. No. 18.) He seeks counsel based on indigence, the complexity of this matter, and lack of legal experience. (*Id*. at 1-2.) An indigent plaintiff in a civil action, unlike a criminal defendant, has no constitutional right to the appointment of counsel. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Rather, the appointment of counsel is a "privilege justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (citations omitted). Whether to appoint counsel for an indigent plaintiff in a civil action is a matter within the discretion of the court. *Id*. at 604. In determining whether to appoint counsel, courts are to consider the type of case presented and the abilities of the plaintiff to represent himself. *Id*. at 606 (citations omitted). Evaluation of these factors in turn "generally involves a determination of the complexity of the factual and legal issues involved." *Id*. (internal quotation marks and citation omitted).

---

(Doc. No. 15 at 12.) However, the complaint does not allege that any of the five inmate defendants sexually assaulted the plaintiff. (*Id*.)

[10] The court makes no findings or representations regarding any applicable statute of limitations for such state law claims.

In this case, the court has determined that the plaintiff states colorable failure-to-protect and retaliation claims. The plaintiff has clearly articulated these claims in the complaint. Neither the factual nor legal issues involved appear, at this time, to be so complex as to constitute "exceptional circumstances." Accordingly, the court finds that the interests of justice do not require appointment of counsel at this time. The motion to appoint counsel will therefore be denied without prejudice. The plaintiff may raise this issue in the future if warranted by the circumstances.

The plaintiff has also filed six procedural motions and a "Statement and Facts." (Doc. No. 19, 20, 21, 22, 23, 24, 25.) One of these is a cursory motion for a thirty-day extension. (Doc. No. 22.) Because the motion contains no reason for the proposed delay, it will be denied without prejudice. The Magistrate Judge will consider the remaining motions and the other document in due course.

## IV. Conclusion

For the reasons explained above, the plaintiff's *in forma pauperis* application will be granted. The plaintiff's failure-to-protect claim based on allegations of inmates tempering with meals will proceed against Officer Foster and Sergeant Castillo in their individual capacities. The plaintiff's claim for retaliation under the First Amendment will proceed against Officer Foster, Sergeant Castillo, Case Manager Tate and Unit Manager Keys in their individual capacities. All other claims will be dismissed based on the statute of limitations, sovereign immunity, or failure to state a claim. The failure to protect claims based on inmate sexual assaults against Officer Foster, Sergeant Hunt, Case Manager Tate, Unit Manager Keys, Warden Mays, Associate Warden Lewis, and Captain Herro, and the due process claims against Sergeant Hunt, Case Manager Tate, Unit Manager Keys, Captain Herro, Associate Warden Lewis, and Warden Mays will be dismissed without prejudice. All remaining claims will be dismissed with prejudice.

The motions to appoint counsel and to grant an extension of time will be denied without prejudice. This case will be referred to the Magistrate Judge for further proceedings, and the Magistrate Judge will consider the remaining motions and filings in due course.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge